## (September 3, 1982)

■ In the Matter of FRANCIS W. DUNFORD et al., Appellants, et al., Petitioner, v VINCENT L. LEIBELL, III, et al., Respondents. — Appeal from a judgment of the Supreme Court, Dutchess County (Jiudice, J.), dated August 27, 1982, which dismissed the proceeding to invalidate the designating petition of respondent Vincent L. Leibell, III, and to strike his name from the registration and enrollment records of the Putnam County Board of Elections. Judgment affirmed, without costs or disbursements. In 1978 respondent Vincent L. Leibell, III, registered in the Ninth Election District in Putnam County and enrolled in the Republican Party. He voted in that election district up to and including the November, 1980 General Election. On or about June 22, 1981 he moved to the Seventh Election District in Putnam County. At that time he neither transferred his registration and enrollment nor reregistered in his new election district. On November 3, 1981, unaware that as a result of his change of residence he had moved into a new election district, Leibell attempted to vote at his usual polling place. He was then informed by employees of the Putnam County Board of Elections at the polling place that as a result of his residency change, he had moved into a new election district; he could not vote at his usual polling place; and he would need a court order to vote on that day. Leibell then obtained a court order from Justice Dickinson and, pursuant to said order, he was permitted to vote in his new election district on November 3, 1981. Sometime during June of 1982 Leibell went to the county board of elections in order to verify his registration and enrollment records because he was considering running as the Republican candidate for the New York State Assembly, 90th Assembly District. At that time Leibell discovered that the

records of the county board of elections indicated that he had last voted in 1980 in the Ninth Election District, rather than in 1981 in the Seventh Election District. When he informed employees at the county board of elections that his registration record was incorrect, they informed him that they could not make any corrections. Therefore, on July 1, 1982 Leibell sought a court order directing that the county board of elections correct its records to reflect that he last voted in the General Election in 1981 from his new residence and for such other and further relief as may be just and proper. In granting the relief requested by Leibell, Justice Beisheim, in his order dated July 1, 1982, provided, in part, that the records of the county board of elections shall reflect a "transfer" of Vincent L. Leibell, III's "registration and enrollment". On July 6, 1982 Leibell reregistered. His registration form indicated that his enrollment was transferred by the county board of elections, purportedly in compliance with Justice Beisheim's July 1, 1982 order. On August 10, 1982 a designating petition was filed in the office of the State Board of Elections, purporting to designate Leibell as a candidate for the Republican Party nomination for the office of Assemblyman of the State of New York from the 90th Assembly District, to be voted upon at the General Election to be held on November 2, 1982. On August 13, 1982 the appellants filed with the State Board of Elections objections to Leibell's designating petition on the basis, *inter alia,* that he was not a duly enrolled member of the Republican Party. After a hearing conducted on August 24, 1982 the State Board of Elections found, *inter alia,* that Leibell was an enrolled Republican and, therefore, the challenged designating petition was valid.[1] The instant proceeding was then commenced seeking to invalidate Leibell's designating petition and to strike his name from the registration and enrollment records of the county board of elections. At a hearing held on August 26, 1982 before Justice Jiudice, Leibell testified,[2] that, on November 3, 1981, after he obtained Justice Dickinson's order, he proceeded to the polling place in his new election district, where he submitted the order to the employees at the polling place, signed a card "like * * * in the black book" and was permitted to vote. In addition, he filled out a form indicating his "change of residence", which he then returned to the employees at the polling place. However, as testified to by two employees of the county board of elections, the county board never received Justice Dickinson's order, nor had it received any form filled out by Leibell. They further stated that the county board's records showed that Leibell had never signed a blank registration card in the poll books. Such books are kept locked and blank registration cards are affixed to them prior to an election for possible use during that time and are not removed until after the election when such books are returned to the county board of elections. When further questioned concerning Leibell's visit to the county board of elections in June of 1982, Dianne B. Hochberger, an employee of the county board of elections testified that there was "no problem" concerning Leibell's enrollment, noting that Leibell signed a "[t]ransfer of enrollment" form at that time,[3] but "[j]ust with the registration itself". While conceding that if a voter's registration terminated, his enrollment also terminated, Hochberger then stated that the instant case did not involve a "cancellation" but that "[t]his was a transfer of an

1. In its August 24, 1982 determination, the State Board of Elections indicated that it was required to accept Justice Beisheim's order on its face. At Special Term the State board specifically contended that appellants' remedy was to move to vacate that order.

2. Only selected portions of the transcript of this hearing have been submitted to this court.

3. Leibell specifically testified that he did not sign any papers in June of 1982 at the county board in light of the alleged errors on his registration form which had been filled out by the employees of the county board.

existent and valid registration. The registration was in full force in 1981." She further indicated that on July 6, 1982, after Justice Beisheim's order was received by the county board, Leibell's registration at his new address was completed. At the conclusion of the hearing, Justice Jiudice dismissed this proceeding, finding that Leibell had properly voted in November of 1981, pursuant to Justice Dickinson's order and that the testimony indicated that Leibell's efforts thereafter were an attempt to correct his records. Appellants essentially argue that Justice Beisheim improperly ordered the "transfer" of Leibell's enrollment. However, when Leibell changed his residence, his Republican Party enrollment, although subject to cancellation for nonresidence, was not canceled (see Election Law, § 16-110, subd 1 [eff Dec. 1, 1978];[4] *Matter of Wydler v Cristenfeld,* 35 NY2d 719, 721 [concurring opn by Jasen, J.]). "Enrollment in a party, unless qualified, means enrollment in the State Party. [Leibell] is such an enrolled member whether or not he had effected a valid transfer of his registration and enrollment" (*Matter of Beary v Nadjari,* 42 NY2d 981, 982). Accordingly, under these circumstances, the judgment appealed from should be affirmed. Mollen, P. J., Damiani, Titone, Mangano and Thompson, JJ., concur.

## (September 7, 1982)

4. Section 16-110 (subd 1 [eff Dec. 1, 1978]) of the Election Law provides, in part, that upon the application of a duly enrolled voter of a party, the Supreme Court or the County Court shall direct the enrollment of any voter with such party to be canceled if it appears that the voter does not reside at the address on his registration record.